YOUNG et al. v. UNITED ZINC COS. et al.

(District Court, D. Massachusetts. February 15, 1912.)

No. 242 (835).

CORPORATIONS (§ 457*)—POWERS—CONTRACTS—ULTRA VIRES.

Defendant was organized and empowered by its charter to acquire mines, mining rights, and lands, to mine, refine, and prepare for market mineral substances and ores of all kinds, and in connection therewith carry on any other operations necessary or incidental thereto, including the purchase and sale of all mining supplies, with the privilege of doing a general merchandise business at the place or places where the mining business is conducted or elsewhere. Defendant, having acquired certain mining claims in Missouri from which it expected to produce large quantities of zinc ore, contracted in good faith to sell certain quantities of zinc ore at stated periods to B. & Co., but, being unable to mine all the ore from its own mines, except at a cost greater than the price at which it could purchase ore from others, bought more ore than its own mines produced in order to fulfill the contract. *Held*, that defendant had incidental power to procure such ore to comply with its contract, and that its act in so doing was not ultra vires.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1808, 1809; Dec. Dig. § 457.*]

In Equity. Bill by Royal Bosworth Young and others against the United Zinc Companies and others. Bill dismissed.

Walter H. Foster, E. Irving Smith, and Charles S. Hill, for complainants.

Charles A. Digney, Samuel Williston, and Hollis R. Bailey, for defendants.

## Facts.

ALDRICH, District Judge. This is a suit in equity by certain stockholders of the United Zinc Companies, a corporation organized under the laws of the state of Maine. The purposes of the corporation were declared as follows:

"To purchase, lease, or otherwise acquire mines, mining rights, and lands.

"To mine, excavate, quarry, smelt, refine, and prepare for market, in any way that may be necessary or suitable, metal and mineral substances and ores of all kinds.

"In connection with the foregoing, to carry on any other operations that may be necessary or incidental thereto, including the purchase and sale of all mining supplies, and with the privilege of doing a general merchandise business at the place or places where its mining business is conducted, or elsewhere."

Not long after its organization, the United Zinc Companies entered into a contract with Beer, Sondheimer & Co., whereby it was to deliver under the terms of the contract certain quantities of Joplin ore at stated periods. The Zinc Companies was then opening and operating a mine or mines of its own in the Joplin territory, and had mining rights in other mines in that territory.

I find as a fact that the contract was entered into in good faith by the contracting parties, and that the Zinc Companies at the time had an expectation that it might soon, if not at the beginning, produce sufficient ore from its own mining properties and mining rights to enable it to fulfill the contract. It unfortunately resulted, however, as sometimes happens in mining enterprises, that its particular properties could not be made to produce ore in sufficient quantities, except at a very much larger expense than was at first supposed; and it was found that it could buy in the open market Joplin ore, produced from mines more favorably situated, at a very much less cost than it could be produced from its own mines, and the Zinc Companies proceeded to do this, buying considerably more than its own mines produced in order to fulfill the contract.

The plaintiffs, who bring their proceeding in equity as stockholders, are seeking an injunction against further performance of the contract, and for an accounting as to past profits, and perhaps for other incidental relief.

## Statement, and Ruling, of Question of Law.

The case of the stockholders in all its phases depends upon whether the contract was ultra vires. On the facts it does not seem to me the situation is one to be controlled by the ultra vires doctrine.

In the first place, the contract, at its inception, did not contemplate such a departure from the purposes of the organization as would be involved in entering upon an original scheme of purchase and sale. Again, it was not a transaction in the nature of buying and selling, in the sense of dealing in such a business as an independent branch. The relations were contractual, and the general object of the Zinc Companies was to provide through a specific and certain contract for the disposition of the ore which it expected to produce from its own

mines and mining rights. So it would seem that the contract at its inception contemplated business within the reasonable scope and purposes of the Zinc Companies' enterprise.

It is true the parties understood at the time the contract was made that what its mines were then actually producing was not sufficient to enable them to meet the requirements of the contract in respect to delivering the quantity named; but upon the facts it appears there was a reasonable expectation that they would soon be able to produce the Joplin ore in sufficient quantities, and under the contingency of unexpected failure of production—an unexpected contingency arising subsequent to the contract—the Zinc Companies went into the market and bought ore which, together with its own production, enabled it to comply with its contract engagements to deliver.

The transactions of purchase were for the pecuniary benefit of the Zinc Companies and its stockholders, and, without elaboration in respect to the reasons for the nonapplication of the ultra vires doctrine to the situation in question, it seems to me that there was not such a clear and distinct departure from the scope of the original purposes of the corporation as to warrant the application of its principles here. The facts do not present a case where there was a plain and independent departure from the purposes of the corporation, but rather a situation in which an exigency arose in respect to its main business (after contractual relations within the scope of the organization had been created), where resort was had to incidental means in order to meet the exigency and conserve the rights of the corporation and its stockholders.

I think the bill should be dismissed, and it is so ordered.